**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Elmer C. OBERHELLMANN,
Defendant–Appellant.**

No. 90–3864.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1991.

Decided Oct. 18, 1991.

Rodger A. Heaton (argued), Patrick Kelley, Asst. U.S. Attys., Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

John M. Bray, Charles B. Wayne (argued), Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for defendant-appellant.

Before BAUER and MORAN *, Chief Judges, and POSNER, Circuit Judge.

_____

* Hon. James B. Moran, of the Northern District    of Illinois, sitting by designation.

POSNER, Circuit Judge.

Judge Mills found Mr. Oberhellmann, a member of the Missouri bar, guilty of criminal contempt and sentenced him to two months in jail. A plaintiffs' tort lawyer, Oberhellmann had in 1987 hired a young lawyer named Howard Becker to assist him in his practice; the terms of their relationship were never formalized. Shortly after Becker came on board, Oberhellmann was retained by Douglas Payton to sue the City of Mattoon, Illinois, for an accident that had rendered Payton a quadriplegic. Oberhellmann assigned the matter to Becker, who filed suit in Judge Mills' court. Only Becker entered an appearance for Payton, and the court was unaware of any interest in the case that Oberhellmann might have had. Indeed, throughout a lengthy pretrial period that included extensive discovery, a number of motions, and periodic court appearances, Becker remained the only counsel of record for Payton.

On April 10, 1990, Oberhellmann fired Becker. Shortly afterward, Oberhellmann discovered that the Payton file was missing. Becker claims to have told Oberhellmann's secretary that he (Becker) had the file because it was his case. Oberhellmann insists that Becker denied he had the file but that he, Oberhellmann, suspected that Becker had taken the file and would attempt to settle the case in order to get some ready cash. Becker did settle the case, and notified Judge Mills, who on April 27 signed an order dismissing the case with prejudice pursuant to Fed.R.Civ.P. 41(a)(2). On that very day, fearing though not knowing the worst, Oberhellmann had prepared a notice of withdrawal of appearance which states that Howard Becker "hereby withdraws as counsel for Plaintiff" and that "Elmer C. Oberhellmann, Inc. will remain as counsel for Plaintiff." Oberhellmann forged Becker's signature on this document, then mailed the notice to the clerk of Judge Mills' court and a copy of the notice to the lawyer for the City of Mattoon. The date of these mailings is unknown but the clerk received the notice on May 9 and docketed it the next day; we shall see that the city's lawyer must have received his copy no later than the clerk.

With the copy for the city's lawyer went a cover letter in which Oberhellmann stated that Becker had left his office and that Payton was a client of Oberhellmann's professional corporation.

Early in May, Oberhellmann discovered that Becker had indeed settled the Payton suit. On May 10 he called the city's lawyer and told him that Becker had in settling the case acted without authority. Oberhellmann followed up this call with two telegrams. Also on May 10, Judge Mills received a letter from Becker, mailed the previous day. Apparently, the city's lawyer had, upon receiving Oberhellmann's letter enclosing the notice of withdrawal of appearance, immediately called Becker, who promptly fired off the letter to Judge Mills. The letter stated that Becker's name on the notice of withdrawal had been forged and that Oberhellmann had no interest in the case.

On May 29, the city's lawyer, joined by Becker, moved Judge Mills to enforce the settlement agreement. The judge denied the motion on the ground that his order of April 27 had ended the case and that the subsequent brouhaha between Becker and Oberhellmann had no effect on the settlement's validity. Payton had not complained. He had agreed to the settlement negotiated by his counsel of record and that, Judge Mills said, was the end of it. The city was not satisfied, and filed in Judge Mill's court an interpleader suit to obtain a judicial determination of the respective rights of itself, Payton, Becker, and Oberhellmann. That suit was settled in December 1990 with an order confirming the tort settlement that Becker had negotiated with the city on Payton's behalf (a "structured," i.e., installment, settlement with a present value of $500,000) and awarding Oberhellmann $121,000 in fees and expenses and Becker $21,000.

In the middle of all this, on May 14, Judge Mills had on his own initiative sent a notice of criminal contempt charges to Oberhellmann. The notice laid the charges under 18 U.S.C. § 401(2), which was wrong. That section punishes misbehavior by court officers, which for purposes of the section

the litigants' attorneys are not. *Cammer v. United States*, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956). One of the questions raised by this appeal that we need not decide is whether the naming of the wrong statute was a mere typographical error or something more harmful because it may have made the judge slide over a critical question under section 401(1) that is immaterial to 401(2)—whether there was an actual obstruction of justice as a consequence of Oberhellmann's misconduct.

The government having agreed not to seek a sanction that would trigger the defendant's right to a jury trial, the case was tried by Judge Mills on July 3, 1990, pursuant to the streamlined procedures of Fed. R.Crim.P. 42(b). After an 80–minute hearing in which Oberhellmann (who was not represented by counsel) admitted having knowingly acted without authority in signing Becker's signature to the notice of withdrawal of appearance, the judge found him guilty. 748 F.Supp. 1344 (C.D.Ill. 1990).

■ A federal court is authorized to punish for criminal contempt "misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1). As an original matter, having reference to the grammar as well as apparent purpose of this provision, we might have thought that the only significance of the reference to obstructing justice was the help it gave in determining whether misbehavior outside the presence of the court was sufficiently likely to interfere with the sound functioning of the court to be punishable, and that of course a judge could punish misbehavior—properly defined to exclude trivial breaches of etiquette or decorum—that occurred in his presence whether or not it actually obstructed the administration of justice. *United States v. Lowery*, 733 F.2d 441, 444–45 (7th Cir.1984); *Farese v. United States*, 209 F.2d 312, 316 (1st Cir.1954); cf. *Ex parte Savin*, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889); *In re Brown*, 454 F.2d 999, 1013–14 (D.C.Cir.1971) (dissenting opinion). The original statute (Act of March 2, 1831, ch. 99, 4 Stat. 487) fairly dictated this interpretation because it had a comma after "presence," and the subsequent disappearance of the comma in the course of a revision of the criminal code was an accident. *United States v. Lowery*, 733 F.2d at 445. But, bowing to a long line of cases, the government concedes that, wherever the misbehavior occurs, the government must prove (of course beyond a reasonable doubt) that the misbehavior actually obstructed the administration of justice—by delaying proceedings, making more work for the judge, inducing error, imposing costs on parties, or whatever. *In re McConnell*, 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962); *United States v. Seale*, 461 F.2d 345, 367 (7th Cir.1972); *Vaughn v. City of Flint*, 752 F.2d 1160, 1168 (6th Cir.1985); *In re Kirk*, 641 F.2d 684, 687 (9th Cir.1981); *In re Brown, supra*, 454 F.2d at 1003–04.

The difference between these two interpretations might not affect the outcome in this case, for it is uncertain that merely filing a paper with the clerk of court should be classified as a form of misbehavior that is committed in the "presence" of the court. Perhaps the term should be confined to words uttered or gestures made in the courthouse, rather than interpreted to embrace the quiet filing of a piece of paper, albeit a fraudulent one. The circuits are split on this (surprisingly) infrequently litigated issue. Compare *Laughlin v. United States*, 151 F.2d 281, 285 (D.C.Cir.1945) (per curiam), and *Schmidt v. United States*, 124 F.2d 177 (6th Cir.1941), with *United States v. Lee*, 720 F.2d 1049, 1052 (9th Cir.1983). What is plain is that a mere filing in the clerk's office could not rise to the level of a contempt committed in the "actual presence of the court," the test for whether the contempt can be punished without any notice or hearing at all, Fed. R.Crim.P. 42(a), because that test requires that the judge have seen or heard the act alleged to be contemptuous. *Id.; Blalock v. United States*, 844 F.2d 1546, 1553 n. 4 (11th Cir.1988) (concurring opinion). The present case was and could only be prosecuted under Rule 42(b), which requires notice and a hearing—but it's still a pretty summary procedure, and the occasions for

its exercise should be circumscribed as narrowly as is consistent with the maintenance of order and decorum essential to the effective operation of the judicial system. *United States v. Lowery, supra,* 733 F.2d at 446; Norman Dorsen & Leon Friedman, *Disorder in the Court* 107–08 (1973).

■ But all this is to one side of our case. For the parties agree as we have said that there must be an "actual obstruction" even if what occurred here was misbehavior in the presence of the court; and whatever exactly "actual obstruction" means, it requires, at a minimum, that the defendant's conduct have had an effect. An effect, in turn, presupposes a cause. Causation is a complex, contextually variable concept, in law as in life. H.L.A. Hart & Tony Honoré, *Causation in the Law* (2d ed. 1985); John Borgo, "Causal Paradigms in Tort Law," 8 *J.Legal Stud.* 419 (1979). But we understand the government to concede, and wisely too, that the requirement of causality, and hence of an effect of the defendant's contemptuous behavior and hence of an actual obstruction of justice, cannot be satisfied here unless, but for Oberhellmann's forging of Becker's name to the withdrawal of appearance, the commotion that followed—the motion to enforce the settlement, the denial of that motion, the interpleader suit, and the consequent delay in putting the settlement into effect—would not have occurred, or at least would not have been as great as it was. As far as can be determined from this record, it would have occurred anyway, and would have been just as great. Suppose that instead of filing a notice of withdrawal of appearance and mailing a copy to the city's lawyer, Oberhellmann had mailed just the cover letter, notifying the lawyer that Becker had acted without authority, and then, when he found out that Becker had as he feared settled the case, had followed up the letter with the phone call and the telegrams. The city's lawyer would still have joined with Becker in filing the motion to enforce the agreement, the motion would still have been denied, therefore the city would still have filed the interpleader suit, and that suit would have wended its way to a conclusion on the same timetable and with the same consequences. The only difference is that Becker would not have written a letter to Judge Mills complaining of Oberhellmann's forgery and Judge Mills would not have instituted a proceeding for contempt. The requirement of proving an obstruction of justice obviously cannot be satisfied by proof that the contempt proceeding itself, and such ancillary events as the complaint that touched it off, imposed costs, delay, etc. That would read the requirement of proving an obstruction of justice out of the law, for in every case of contempt the contempt proceeding itself imposes the sort of burdens that, if imposed by the act alleged to be contemptuous, would satisfy the requirement of proving an obstruction of justice.

■ Of course it is just speculation that the forged notice had no incremental effect on the ensuing proceedings. So, if the defendant had the burden of proof, Oberhellmann would lose. But the government has the burden, so it loses. The judgment must therefore be reversed with directions to enter a judgment of acquittal. This ruling should not, of course, be interpreted as an exoneration of Mr. Oberhellmann's wholly improper act in forging Becker's signature—an act that cannot be excused by reference to the claimed provocation supplied by Becker's stealing the Payton file and settling the case (quite possibly for an insufficient amount) *sub rosa,* improper as *that* conduct would have been as well. All we hold is that on this record no trier of fact could rationally find that Oberhellmann had actually obstructed justice. Not all criminal conduct can be proved so beyond a reasonable doubt and not all professional misconduct is criminal. But the remedies for wrongdoing are not limited to criminal sanctions, let alone to criminal contempt. Rule 11 of the Federal Rules of Civil Procedure provides mandatory sanctions for the signing of a knowingly false pleading—and the signer of course was Oberhellmann, the forger, not Becker. That is not all. The filing of a knowingly false statement with a federal court can be punished criminally under 18 U.S.C. § 1001, as in *United States v. Barber,* 881

F.2d 345, 349–51 (7th Cir.1989). (We disclaim any opinion on whether such a charge would be appropriate here.) And while Oberhellmann is not a member of the bar of the U.S. District court for the Central District of Illinois and thus is not subject to professional discipline by that court, we trust that the disciplinary authorities of the Missouri bar, to whom a copy of this opinion is being sent, will take a close look at both Oberhellmann's and Becker's conduct.

REVERSED.