IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.92-1797
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

FRED TIME,

                              Defendant-Appellant.

_____

No. 92-1798
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

STANLEY WEINBERG,

                              Defendant-Appellant.

_____

No. 93-1300
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

FRED TIME and STANLEY WEINBERG,

                              Defendants-Appellants.
_____

Appeals from the United States District Court
       for the Northern District of Texas
_____

(May 17, 1994)

1

Before REAVLEY and JOLLY, Circuit Judges, PARKER[1], District Judge.

PARKER, District Judge:

Fred Time ("Time") and Stanley Weinberg ("Weinberg") were found in criminal contempt of court in violation of 18 U.S.C. § 401 and fined. They appealed and their consolidated appeals are now before this Court.

                                  FACTS

Appellants Time and Weinberg served as attorneys for Russell Fagan (Fagan), a defendant in a criminal action tried before United States District Judge Jorge A. Solis. On August 6, 1992, during Fagan's case-in-chief, Fagan called Gary Jordan (Jordan) to the stand. Jordan had agreed to testify for Fagan, but his testimony apparently surprised Fagan's counsel at trial and damaged Fagan's case. After direct and cross-examination of Jordan, the government asked the court to instruct Jordan to remain available on a standby basis, in the event the government decided to call him in rebuttal. The court instructed Jordan that he was free to go, but to be available by phone. After the lunch break, at the prosecutor's request, Federal Bureau of Investigation (FBI) Agent Harris related to the Judge that he had called Jordan to advise him that he might be recalled. Agent Harris stated that Jordan told him that Time had whispered to him, "try not to be available," as he left the witness stand. Jordan also told Harris that "Weinberg or Time"

---

[1] Chief Judge of the Eastern District of Texas, sitting by designation.

said that if he "would not be around this afternoon...it would be a whole lot better."  It is unclear from the record whether Agent Harris was under oath at the time he made these statements to the court.

Judge Solis allowed both attorneys to respond to the allegation briefly.  Weinberg told the court that Jordan had approached him outside the courtroom and asked him, "What did he mean?...Do you want me around?"  Weinberg said that he answered, "I'm not telling you not to go anywhere.  I said be available.  I said...I can't control what you are doing, but I told him be available."  Time flatly denied telling the witness to be unavailable.

Later that day, Jordan was called back and questioned by the Judge, and testified under oath to much the same story as Agent Harris had earlier related to the court.

After Fagan's trial concluded on August 7, 1992, the court gave the Appellants the option of going forward with a contempt hearing at that time or setting it down for a future hearing.  Weinberg, speaking for both appellants, asked for more time to get counsel and prepare a defense, which the court granted.  The court issued an order to show cause why each should not be held in criminal contempt and set a hearing date.  After granting one additional continuance, the court heard the matter on September 4, 1992.

The court began by asking the Assistant United States Attorneys (one of whom had participated in the Fagan prosecution) if they had anything they wished to present.  One of the prosecutors responded, "We have nothing,...other than what's in the record currently."

The previous proceedings had been transcribed, and the court stated on the record that everyone had copies of the transcription. Although it was never formally offered into evidence at the second hearing, that transcript was made part of the record on this appeal.

Judge Solis then called Valerie Conn, the court reporter during Fagan's trial, as a witness. The court questioned Conn, who testified that she heard Time say to Jordan, "be out of pocket," but did not know the context of the statement, as she could not hear the rest of the conversation. The appellants cross examined her, but the Assistant United States Attorneys asked no questions. The Assistant United States Attorneys called no witnesses.

The Appellants both testified, and each called numerous character witnesses. The prosecutor cross examined only the Appellants themselves.

In an Order dated September 30, 1993, the trial court found that Weinberg told the witness to disregard instructions from the court, that he was therefore in criminal contempt of court and fined Weinberg $2,500. The trial court entered a similar order as to Time, but, finding him more culpable, assessed a fine of $5,000.

Appellants later learned that Jordan had cooperated with the FBI in the Fagan prosecution and in other cases. Appellants moved for a new contempt trial when the government revealed this information at Fagan's sentencing in November 1992. The trial court denied the motion for new trial.

THE PROSECUTION OF THE CONTEMPT

4

a. Who prosecuted the contempt?

Appellants allege that Judge Solis acted as both the prosecutor and the judge of the contempt proceedings. In a criminal contempt action conducted pursuant to Federal Rule of Criminal Procedure 42(b), the judge may not prosecute the contempt and at the same time act as judge. *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523 (5th Cir. 1992) (citing *In re Davidson*, 908 F.2d 1249, 1251 (5th Cir. 1990)). A review of the record leads us to the conclusion that the United States Attorney's office prosecuted the action against the Appellants. The alleged contempt was discovered by Assistant U.S. Attorney (AUSA) Hastings who brought it to the attention of the judge in open court, on the record. Hastings called Agent Harris, who advised the court of the allegations. Judge Solis allowed appellants to respond briefly, then continued Fagan's trial. Jordan, having been requested to return to court by Agent Harris, responded to questioning by the court, the appellants and AUSA Hastings. At the later hearing, the court began by asking AUSA Melsheimer if he was present to represent the government, to which he replied, "I am, Your Honor, along with Mr. Webster from our office." AUSA Melsheimer indicated that he would rely on the testimony already in the record. Prior to asking the court reporter to testify, the court noted that he had advised "counsel for the defense, as well as counsel for the government," that the court reporter had information about the contempt allegations. The appellants note that the AUSA declined to cross examine the witnesses called by the Appellants, except the Appellants

5

themselves.  However, the court specifically asked the prosecutors after each direct examination if they had any questions for the witness, and the prosecutors responded by cross examining the witness or declining to do so.

In summary, the AUSA initiated the proceedings in open court, on the record, and called the first witness.  The court's procedure thereafter follows the accepted adversary process wherein the prosecutor makes his case first, and the defendants then call witnesses that the prosecutor is given the opportunity to cross examine.  The prosecutors exercised their judgment by declining to cross examine the character witnesses, who did not claim to have any personal knowledge of the fact issue before the court.  It certainly cannot be error for the judge to accept that decision and allow the hearing to continue.  The judge called one witness and questioned her, as well as questioning only one other witness, out of a total of fifteen witnesses.

The appellants make much of the fact that the court called and questioned the court reporter and questioned Jordan.  Federal Rules of Evidence 614(a)(b) and (c) provide:

> (a) **Calling by court.**  The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

> (b) **Interrogation by court.**  The court may interrogate witnesses, whether called by itself or by a party.

> (c) **Objections.**  Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

The judge's right to question a witness is within his

discretion so long as he remains impartial and does not exhibit prosecutorial zeal. *United States v. Zepeda-Santana*, 569 F.2d 1386, 1289 (5th Cir. 1978). The record indicates that the court gave advance warning to both parties concerning his intent to call the witness so that they could prepare for cross examination and objections and it reveals no prosecutorial zeal in the judge's exercise of his Rule 614 authority. The Appellants, however, did not timely object to the calling of the court reporter or to the questions posed to either witness. In fact they have never advanced any objection or reason that would lead us to believe that the evidence adduced from the court reporter or Jordan was inadmissible or otherwise improper.

We hold, under the facts of this case, that the judge never assumed the role of prosecutor of the contempt action, but served solely as an impartial judge.

b. Disqualification

Appellant Time complains that Judge Solis should have disqualified himself from hearing the contempt action. Federal Rule of Criminal Procedure 42(b) provides that a different judge must hear the contempt action whenever the conduct is based on disrespect to, or criticism of, the judge personally. There were no allegations and no evidence of a personal attack on Judge Solis, and the record reveals no hint that Judge Solis was personally aggrieved by the conduct alleged against Appellants. This argument is without merit.

c. Was the United States Attorney's office precluded from

prosecuting this case?

Appellants argue that the United States Attorney's office was precluded from prosecuting this action because they represented, in the underlying criminal case, the party who was the beneficiary of the Court's order that was at the heart of the contempt action. The question of whether the Supreme Court's holding in *Young v. U.S. ex rel Vuitton et Fil, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) requires the disqualification of the local federal prosecutor when the government was the beneficiary of the subject order has not been addressed by this or any other circuit court.

In *Young*, Petitioners were found guilty of criminal contempt by a jury, for violating the district court's injunction prohibiting trademark infringement. Vuitton, S.A. was a French leather goods manufacturer who sued several members of the Klayminc family for manufacturing imitation Vuitton goods. The suit settled, with an agreement that the Klaymincs would pay damages and consent to the entry of a permanent injunction prohibiting them from manufacturing or distributing imitation Vuitton goods in the future. Less than a year later, Vuitton began to suspect that the Klaymincs were violating the injunction, and hired an investigation firm that confirmed their suspicion. Vuitton's attorney, J. Joseph Bainton requested that the district court appoint him as special counsel to prosecute a criminal contempt action for violation of the injunction. The court found probable cause to believe that petitioners were engaged in conduct contumacious of the court's

injunctive order, and appointed Bainton and his colleague Devlin to represent the United States in the investigation and prosecution of the contempt, as proposed by Bainton.  The United States Supreme Court reversed the convictions, holding that counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order.  *Young*, 481 U.S., at 790, 107 S.Ct., at 2128.

The Supreme Court began its analysis in *Young*, by noting that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders.  The manner in which the court's prosecution of contempt is exercised may be regulated by Congress, *Michaelson v. United States*, 266 U.S. 42, 65-66, 45 S.Ct. 18, 19-20, 69 L.Ed. 162 (1924), and by the Supreme Court by constitutional review, *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), or supervisory power, *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), but cannot be abrogated or rendered practically inoperative. *Michaelson, supra*, 266 U.S., at 66, 45 S.Ct., at 20.  While a court has the authority to initiate criminal contempt proceedings, its exercise of that authority must be restrained by the principle that "only '[t]he least possible power adequate to the end proposed' should be used in contempt cases." *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975)(quoting *Anderson v. Dunn*, 6 Wheat., at 231).  The principle of restraint in contempt counsels caution in the exercise of the power to appoint a private prosecutor.  The rationale for the appointment authority is

necessity, and logic requires a court to first request the appropriate prosecuting authority to prosecute contempt action, and appoint a private prosecutor only if that request is denied. *Young*, 481 U.S., at 801, 107 S.Ct., at 2134. Indeed, if the court finds it necessary to appoint a private attorney to prosecute a contempt, the standard that the appointee is held to is "as disinterested as a public prosecutor who undertakes such a prosecution." *Id.* at 2136. In a case where an appointed prosecutor also represents an interested private party, the ethics of the legal profession require that the prosecutor take into account an interest other than the Government's, thus subjecting him to an inherent conflict of roles. *Id.* at 2138.

In the case at bar, three different Assistant United States Attorneys participated in prosecuting the contempt. Two of them were also involved in the Fagan prosecution. The record reveals no interest other than the government's that would require the allegiance of any of these lawyers. The *Young* plurality concludes by saying, "we must have the assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters." *Id.* at 2141. Because the United States Attorneys did not represent a private beneficiary of the court order allegedly violated, and because they were responsible solely

10

to the sovereign and therefore were charged with the responsibility to seek justice, not merely to convict in both the Fagan trial and Appellants' trial, see MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7-13 (1982), we hold that the Assistant United States Attorneys who prosecuted this case were not precluded from that role by the *Young* prohibition.

SUFFICIENCY OF THE EVIDENCE

Appellants challenge their convictions, claiming that the evidence was not sufficient to sustain a finding that they were guilty beyond a reasonable doubt of criminal contempt. In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the government. *United States v. Hilburn*, 625 F.2d 1177, 1180 (5th Cir. 1980).

The court's show cause order does not identify the statutory source of the contempt allegation, nor does the order of contempt. Appellants ask us to assume that the court entered its order pursuant to 18 U.S.C. § 401, which provides as follows:

> § 401 Power of court
> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as --
>   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>     (2) Misbehavior of any of its officers in their official transactions;
>     (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

The court cannot have relied on § 401(1), because there is no support in the record for a finding that the alleged misbehavior actually obstructed justice. There is no indication that

11

Appellants' acts made more work for the judge, induced error or imposed unnecessary costs on the other parties. *American Airlines, Inc. v. Allied Pilots Association*, 968 F.2d 523, 532 (5th Cir 1992)(citing *United States v. Oberhellmann*, 946 F.2d 50, 52 (7th Cir. 1991)). The time consumed by the contempt investigation itself is not considered in this analysis. *Id.*

Likewise, any reliance on § 401(2) would be misplaced. The term "court officers" in that provision does not apply to counsel appearing before the court. *Cammer v. United States*, 350 U.S. 399, 405, 76 S.Ct. 456, 459, 100 L.Ed. 474 (1956). The language refers to court clerks and other "conventional court officers." *Id.*

There is no evidence that Appellants disobeyed the court's order, since the order did not direct them to do or refrain from doing any act. Therefore, in order to sustain the contempt decree, we must find that the Appellants' conduct was a "resistance" to a lawful order, implying a willful purpose to interfere so as to prevent the order from being carried out. *See, Raymor Ballroom Co. v. Buck*, 110 F.2d 207, 211 (1st Cir. 1940). We find that the evidence in the record is sufficient to sustain a finding that Appellants resisted a lawful order of the Court. We find no merit in Appellants' argument that resistant under § 401(3) is limited to situations where a person resists service of process or subpoena. The plain language of the statute lists resistance to "writ, process, order, rule, decree, and command." The cases relied on by Appellants, *Raymor Ballroom Co. v. Buck*, 110 F.2d 207 (1st Cir. 1940); *The P.I Nevius*, 48 F. 927 (DC NY 1892); *In re Noyes*, 121 F.

12

209 (9th Cir. 1902), are examples of fact situations where there was resistance to a  process or subpoena, but in no way interpret the statute in the restrictive way that Appellants propose.

Appellant Time also complains that the District Court failed to find beyond a reasonable doubt that Time acted willfully and with criminal intent.  Appellants point to no authority and we know of none that requires the district court to recite in his order that the finding of guilt was made using the appropriate standard of proof.  The court's statements finding Time engaged in the alleged conduct, was present in court when the order was entered, and was therefore in contempt of court is sufficient.

## RULE 42(b) REQUIREMENTS

Rule 42(b) of the Federal Rules of Civil Procedure prescribes the procedure regarding the notice which must be given to one charged with criminal contempt outside the presence of the court.  The rule provides:

> ...criminal contempt...shall be prosecuted on notice. The notice shall state the  time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States Attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

Appellants claim that no oral notice was given, and that no application was made by the United States Attorneys' office, although they do not challenge the sufficiency of the content of the show cause order.  At the end of the oral proceeding, Appellants were advised by the trial court of the essential facts

13

constituting the contempt charge, that it was in fact criminal contempt, and that the time and place for hearing was "here and now." They requested a continuance for preparation of a defense, which was granted. The granting of the continuance did not necessitate new 42(b) notice. We therefore hold that the trial court complied with the requirements of Rule 42(b).

JURY TRIAL

Appellants complain for the first time on appeal that they were entitled to a jury trial and did not waive that right.

No right to trial by jury exists for petty crimes. *Bloom v. Illinois*, 391 U.S. 194, 210, 88 S.Ct. 1477, 1486, 20 L.Ed.2d 522 (1968). Petty crimes, as defined in 18 U.S.C. § 19, encompass offenses punishable by fines up to $5000.00. When no maximum penalty has been affixed through legislation, the courts look to the penalty actually imposed as the best evidence of the seriousness of the crime. *Id.* at 211, 88 S.Ct., at 1487. Appellants cite cases decided prior to the enactment of the § 19 $5000.00 limit for the proposition that the limit should be ignored or changed. This argument is not persuasive.

Appellants also note that if a defendant can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one, he has a right to a jury trial, citing *Blanton v. North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103

14

L.Ed.2d 550 (1989). Appellants have identified two consequences of their convictions that they urge this court to consider. The first, damage to their reputations, is not statutory and not appropriately considered. The second, a potential for Texas State Bar disciplinary proceedings, is likewise not statutory, but imposed by a self-regulating bar association.

We therefore hold that Appellants had no right to a jury trial in this case.

MOTION FOR NEW TRIAL

Appellant filed a motion for new trial based on newly discovered evidence. They discovered, after their trial was over, that Fagan had cooperated with the FBI in the investigation of the Fagan case and other cases. Under *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), withholding evidence which the defendant can use to impeach the government's witness requires reversal if there is a reasonable probability that had the evidence been disclosed to the defense, the result would have been different. This Circuit has articulated five factors which must be satisfied before the granting of a motion for new trial is appropriate. *United States v. Ugalde*, 861 F.2d 802, 808 (5th Cir. 1988).

First the evidence must be discovered following trial and second, the failure to learn of the evidence must not be caused by lack of due diligence on the part of the defendant. Although, there is no indication that the government disclosed this information to Appellants, Time testified at the contempt hearing

15

that Jordan had been contacted prior to the Fagan trial by the FBI, who "had him in the U.S. Attorney's Office upstairs for a long period of time. Somewhere in the area of 45 minutes." Since Time was aware of the Jordan-FBI connection prior to the hearing, it is a stretch to categorize it as newly discovered evidence, and there is no question that Appellants could have pursued this knowledge through cross examination of Jordan himself, or by investigating and subpoenaing witnesses who were involved in Jordan's debriefing.

Additionally, the evidence fails to satisfy the third *Ugalde* requirement that the evidence must not be merely cumulative or impeaching. Evidence of Jordan's cooperation with the FBI does not directly rebut his testimony, and is relevant only as to Jordan's credibility.

The final two *Ugalde* factors require that the evidence be material, and such that a new trial will probably produce an acquittal. The trial court had the testimony of Weinberg as well as Jordan to consider on the issue of Weinberg's guilt and Jordan's testimony concerning Time was corroborated by Conn. Further, the trial court heard testimony that Jordan cooperated with the government and so was aware of his possible bias at the time of the original hearing.

The district court's decision to deny the motions for new trial was not an abuse of discretion. *United States v. Alvarado*, 898 F.2d 987, 994 (5th Cir. 1990).

CONCLUSION

16

The record persuades us that Judge Solis carefully protected Appellants' due process rights and conducted the hearing in a curteous and professional manner.  The Judge in this exercise of inherent power clearly demonstrated his sensitivity to the dual role that judges must frequently assume, that is, protecting the rights of accused persons while at the same time safeguarding the integrity of the court and its processes.

The district court's orders as to Time and Weinberg are AFFIRMED.