# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

| | |
|---|---|
| **SHIRLEY ASHFORD,** ) | |
| ) | |
| Plaintiff ) | **FILED** |
| ) | |
| VS. ) | **December 5, 1995** |
| ) | |
| **JOSHUA C. BENJAMIN, et al,** ) | **Cecil Crowson, Jr.** |
| ) | **Appellate Court Clerk** |
| Defendants. ) | |

_____

**DOROTHY WISEMAN JACKSON**, )
)
  Plaintiffs, )
)
VS. )
)
**JOSHUA C. BENJAMIN, et al.**, )
)
  Defendants. )

_____

**STEVAN L. BLACK, as** *Amicus Curiae,* )    Shelby County Circuit Court
)    No. 44447 T.D & 44448 T.D.
  Petitioner/Appellee, )
)
VS. )    C.A. No. 02A01-9408-CV-00175
)
**JAMES E. BLOUNT, III**, )
)
  Respondent/Appellant. )

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable D'Army Bailey, Judge**


**Robert L. Green**, Memphis, Tennessee
**Wilbur C. Ruleman, Jr.**, Memphis, Tennessee
Attorneys for Respondent/Appellant, James E. Blount, III.

**Stevan L. Black**,
BLACK, BOBANGO & MORGAN, Memphis, Tennessee
As *Amicus Curiae* for Petitioner/Appellee.


OPINION FILED:

**REVERSED AND DISMISSED**

**FARMER, J.**



**CRAWFORD, P.J., W.S.** : (Concurs)
**McLEMORE, Sp. J.** : (Concurs)

Appellant, James E. Blount, III, appeals from the judgment of the Shelby County Circuit Court holding him in criminal contempt on two separate accounts and imposing sentence.

This matter stems from Blount's representation of certain plaintiffs, Mr. and Mrs. Jackson, in personal injury litigation involving the consolidated cases of *Ashford v. Benjamin* and *Jackson v. Benjamin*. Attorney Stuart Breakstone represented the defendants. The trial judge directed a verdict in favor of the Jacksons on the issue of liability and the case went to a jury on the issue of damages. The jury returned a verdict in favor of Mrs. Jackson in the amount of $35,000. The Jacksons' insurance carrier had paid $10,000 of Mrs. Jackson's medical bills prior to trial, but no amount had been paid by the defendants' liability insurer.

After the jury verdict as to Mrs. Jackson was read, Blount directed a "thumbs down" gesture to the jury and muttered words to the effect that the verdict as to his client was unjust or unfair. He then proceeded to exit the courtroom in an abrupt manner, prior to the trial court excusing him or the jurors and before rendition of all the verdicts. According to one juror, as Blount exited, "[h]e had his hands in the air and . . . said this is a travesty of justice." Blount, however, was present in the courtroom when the jury foreman received his certificate of service. Later, after discharge of the jury, Breakstone and various jurors were conversing in the courtroom hallway when Blount approached and, in raised voice, angrily expressed his dissatisfaction with the verdict to the jurors by remarking that "he hoped they could live with themselves for what they did, that what they did was a travesty of justice and they must not have been at the same trial that he was . . . because they would have given his clients more money. . . . that he'd been practicing law for twenty-five years and this is the worst he's ever seen a jury do. . . . that he hoped that if an accident ever happened like this, . . . to them . . . or their family members, that they would have the same damn injuries and the same jury."

Breakstone testified that, following this incident:

[Blount] walked away after he said his piece to them and I started apologizing to the jurors, telling them this is not professional behavior . . . . [Blount] came up from behind and pushed my right . . . . shoulder and said Breakstone, don't you apologize for me. You're the most unethical attorney I know, you defrauded the Court and jury

throughout this entire trial and you lied to the Court and jury throughout the trial, and he pushed me, I think there was three occasions during that -- when he was making those statements to me that he pushed me.[1]

The conduct above described prompted the trial judge to enter an order appointing Appellee, Stevan L. Black, as *amicus curiae* to the court "to investigate, initiate, and prosecute a contempt citation" against Blount.[2] The petition for criminal contempt alleged that Blount violated T.C.A. § 29-9-102(1), (2) and (4), which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.
> (2) The willful misbehavior of any of the officers of said courts, in their official transactions.
> . . . .
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court.

Blount's motion that the trial judge recuse himself from presiding over the contempt proceedings was denied.

The trial court found Blount guilty of two counts of criminal contempt, based upon separate incidents, and expressly characterized his conduct as "outrageous and willful." The trial court fined Blount $50 and sentenced him to serve 10 days in the Shelby County jail on each count. The court also ordered Blount to pay Black $5,000 in attorney fees.

Blount raises the following issues for our review:

---

[1]The record indicates that Blount's behavior was, in part, prompted by his overhearing Breakstone inform the jurors that "all the medical bills had been or would be paid by insurance" in response to the jurors' inquires about the interplay between the plaintiffs' medical bills and insurance. It was during his explanation, that Blount approached, "pushed [his] shoulder" with his fingertips and informed the jurors that insurance had not paid his client's medical bills and that Breakstone was lying telling them otherwise.

[2]The matter was prosecuted pursuant to Rule 42(b) T.R.Cr.P., indicating that the trial judge did not directly witness Blount's actions. It appears from the record that he was subsequently made aware in an in chambers meeting initiated by Breakstone.

I.  Did the trial court commit error in hearing the charges of criminal contempt alleged against the appellant?

II.  Did the trial judge commit error in appointing Stevan L. Black, Esq., to prosecute the contempt charges against the appellant?

III.  Did the trial judge commit error in finding the appellant guilty of two counts of criminal contempt?

IV.  Did the trial court commit error in sentencing the appellant to two ten (10) days sentences, two Fifty Dollar ($50.00) fines and a Five Thousand Dollar $5,000.00) attorney fee?

We begin with discussion of the third issue raised.  We are presented with two separate incidents of contempt upon which the trial court imposed separate sentences.  The first conviction relates to Blount's conduct before the jurors; the second is based upon his conduct toward opposing counsel.  We consider each conviction separately.  Our review is in accordance with Rule 13(e) T.R.A.P. which provides for reversal of the conviction(s) if the proof adduced at trial is insufficient to support the findings by the trier of fact beyond a reasonable doubt.  *See State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Cr. App. 1994).  We do not reweigh the evidence and must afford the prosecution the strongest legitimate view of the proof in the record as well as all reasonable inferences which may be drawn therefrom.  *Creasy*, 885 S.W.2d at 831.  We will disturb a finding of guilt for lack of sufficient evidence only if the facts in the record and any inferences therefrom are insufficient, as a matter of law, for a rational trier of fact to find a defendant guilty beyond a reasonable doubt.  *Id*.  Having been found guilty beyond a reasonable doubt by the trial court, Blount comes to this Court burdened with the presumption of guilt.  *See Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964).

The record is clear that Blount's actions were precipitated by what he perceived to be an inadequate damages award to his client.  We consider first his conduct before the jurors.  At the outset, we note that any factual issues raised by the evidence are resolved by the trier of fact, not this Court, and an adjudication of guilt accredits the testimony of the prosecution's witnesses.  *See Creasy*, 885 S.W.2d at 831.  Thus, any discrepancy in the testimonies regarding Blount's actual comments and behavior have been resolved by the trial court in favor of the prosecution.  Blount's conduct consists of directing a "thumbs down" gesture toward the jury, muttering words to the effect that the verdict as to Mrs. Jackson was unfair and exiting the courtroom in an abrupt manner, prior

to being excused by the court. In addition, he angrily expressed his dissatisfaction with the verdict to certain jurors, as hereinabove detailed, after the trial's conclusion and discharge of the jury.

The power to punish for contempt derives solely from statute and the courts may punish, as contempt, only those acts and omissions expressly prescribed therein. *See State v. Galloway*, 45 Tenn. 326, 329-30 (1868). It is clear from the record that the trial court relied upon all three statutory grounds, as specified in the petition, in adjudging Blount in contempt. To sustain a conviction under subsection (1), the evidence must show beyond a reasonable doubt that Blount's conduct was "willful," "in the presence of the court, or so near thereto" and "[an obstruction to] the administration of justice." The foregoing language was construed by the court in *United States v. Oberhellmann*, 946 F.2d 50 (7th Cir. 1991),[3] which involved an attorney charged with criminal contempt for forging another attorney's signature to a notice of withdrawal of appearance. The *Oberhellmann* court refused to uphold the criminal contempt conviction where the evidence failed to show beyond a reasonable doubt that the attorney's conduct actually obstructed the administration of justice. *Oberhellmann*, 946 F.2d at 50-53. In reaching its decision, *Oberhellmann* reasoned that there must be an "actual obstruction" to the administration of justice which must be proven beyond a reasonable doubt, such as a "delay [of the] proceedings, making more work for the judge,[4] inducing error, imposing costs on parties . . . ." *Id*. at 52. *Oberhellmann* concluded that, "whatever exactly 'actual' obstruction means, it requires at a minimum, that the defendant's conduct have had an effect." *Id*. at 53.

The Supreme Court of Pennsylvania, in *In re Campolongo*, 435 A.2d 581 (Pa. 1981), reached a similar result when construing its criminal contempt statute, authorizing punishment for contempt, ". . . misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." *Campolongo*, 435 A.2d at 583. *Campolongo* held that an assistant district attorney's rhetorical question to the trial court during the course of his objecting to the

_____

[3]The federal statute reads almost identical to ours when empowering a federal court to punish for contempt, "misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." *Oberhellmann*, 946 F.2d at 52.

[4]*Oberhellmann* expressly held that the requirement of proving an obstruction of justice is not satisfied by proof of the contempt proceeding itself. *Id*. at 53.

manner in which defense counsel questioned a prosecution witness was not contemptuous.[5]
*Campolongo*, 435 A.2d at 584. In addition to requiring an actual obstruction, the *Campolongo* court held that the conduct constituting such must "significantly disrupt" judicial proceedings. *Id*. The court reasoned that "although clearly inappropriate and ill advised," the remark did not significantly disrupt the proceedings and, thus, did not obstruct the administration of justice. *Id*. In the instant matter, the record is devoid of any evidence suggesting that Blount's actions, however improper, disrupted the trial proceedings.[6] In fact, at least one juror testified that she did not observe Blount's antics inside the courtroom.

In *Castellio v. State*, 238 S.E.2d 746 (Ga. Ct. App. 1977), a case somewhat analogous to our own, the appellant had an indirect interest in a jury trial which resulted in a verdict contrary to his expectations. Following the jury's discharge and as they exited into the hall, the appellant approached a female juror, shook her hand and stated in an angry or sarcastic voice that he "hoped that [she] was satisfied; [she] had something to live with all of [her] life." *Castellio*, 238 S.E.2d at 746. The statute under consideration in *Castellio* allowed the Georgia courts to punish for contempt, "misbehavior . . . in the presence of the court or so near thereto as to obstruct the administration of justice." *Id*. *Castellio* held the appellant's actions not contemptuous, reasoning that his conduct could not have obstructed or impaired the administration of justice because "the trial had terminated and the jury had been discharged." *Id*.

A distinguishing factor in our case, of course, is the fact that Blount is an attorney and was directly involved in the jury trial proceedings. This distinction, however, makes Blount, unlike the appellant in *Castellio*, subject to possible sanctions by the Disciplinary Board for any professional misconduct.

The Tennessee Supreme Court, in *Winfree v. State*, 135 S.W.2d 454 (Tenn. 1940),

---

[5]Counsel's direct comment was in response to defense counsel's question to a prosecution witness as to why she was "so hostile" to him. The district attorney objected, stating "[w]hy [is he] so hostile to her?" *Campolongo*, 435 A.2d at 584.

[6]While we make no attempt to compare the misbehavior in *Campolongo* to that described in the instant case, we do find the court's rationale applicable when interpreting our own contempt statute.

held that the most familiar forms of acts constituting contempt are those which ***"hinder***, ***delay and obstruct*** the administration of justice," which are usually committed in the course of an adjudication of some cause or the execution of its judgment. ***Winfree***, 135 S.W.2d at 455 (emphasis added). We find nothing in this record to indicate that Blount's actions before the jurors in any way delayed, hindered or otherwise affected the trial's proceedings to conclusion. Furthermore, the record does not suggest that Blount's conduct affected or influenced the decisions of any of the jurors as to the verdict rendered. Blount's antics did not begin until after the verdict as to Mrs. Jackson was announced. All that remained was the reading of the verdicts as to the additional plaintiffs and acceptance thereof by the trial judge. The record fails to establish that either of these events were interrupted by Blount's behavior. Hence, we find insufficient evidence in the record to establish beyond a reasonable doubt that Blount's conduct before the jurors, both in and out of court, obstructed the administration of justice and conclude that Blount cannot be held in contempt for violation of subsection (1).[7]

In this same light, we do not find the proof to show beyond a reasonable doubt that Blount abused or unlawfully interfered with the process or proceedings of the court. Thus, we conclude that there is insufficient evidence to sustain the contempt conviction as to a violation of subsection (4).

This brings us to consideration of subsection (2), with our attention focused on whether Blount is an "officer of the court" for purposes of the contempt statute and whether his conduct involved "official transactions." Appellant directs our attention to the United States Supreme Court's decision in ***Cammer v. United States***, 350 U.S. 399 (1956), to argue that attorneys are not considered officers of the court for purposes of the contempt statute. Indeed, this was the holding in ***Cammer*** upon the Court's interpretation of the federal contempt statute.[8] We also recognize that some state courts do not include attorneys when defining an officer of the court for

---

[7]While there are holdings to the contrary, ***see Tanner v. United States***, 62 F.2d 601 (10th Cir. 1932), cert. denied, 289 U.S. 746 (1933). we believe the better line of reasoning is expressed in the cases herein discussed.

[8]The federal counterpart to our contempt statute, authorizes the federal courts to punish as contempt "[m]isbehavior of any of its officers in their official transactions; . . ." ***Cammer***, 350 U.S. at 399-400 & n. 1.

purposes of their own contempt statutes. *See Campolongo*, 435 A.2d at 583 n. 7. The Tennessee Supreme Court, however, has held to the contrary. In *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d at 912, an attorney was cited for violating the contempt statute, including subsection (2). In sustaining the conviction, our supreme court acknowledged that "[i]t is hardly necessary to say that attorneys are officers of the court. It is well known that they exercise the utmost good faith in the discharge of their duties to the court." *Id.*

We next consider whether Blount's conduct arose from his "official transactions" with the court. Our research has uncovered scant case law interpreting the foregoing phrase. Black's Law Dictionary 1668 (4th ed. 1951) defines "transaction" as the "[a]ct of transacting or conducting any business; negotiations; management; proceedings; that which is done; an affair." In *Robinson*, 377 S.W.2d at 910-12, the attorney's contempt conviction arose from his untrue statements directly communicated to the court, both in open court and in chambers, pursuant to his representation of a client. The contempts occurred both before and after the commencement of the lawsuit, but prior to its conclusion. In the case at bar, the evidence is insufficient to establish that any of Blount's actions were pursuant to his "official transactions." His misconduct did not occur during any transaction or direct communication with the court and was not peculiar to the fact that he was an attorney and "officer of the court." Therefore, the contempt conviction for violation of subsection (2) cannot be sustained.

We now address Blount's conduct toward opposing counsel, all of which occurred in the courtroom hallway after discharge of the jury and conclusion of the trial proceedings. Blount's misconduct includes pushing or jabbing Breakstone with his fingertips three times and accusing opposing counsel of being unethical and defrauding the court and jury throughout the trial, in the presence of certain jurors. Based upon our foregoing analysis of Tennessee's contempt statute, we are compelled to conclude that the evidence fails to establish beyond a reasonable doubt that Blount's actions toward opposing counsel obstructed the administration of justice, interfered with the proceedings of the court or were pursuant to official transactions. As heretofore mentioned, Blount's actions toward Breakstone occurred only after conclusion of the personal injury case, with the jury having performed its sworn duty to the court and discharged.

Our decision is in accord with ***State v. Creasy***, wherein the court of criminal appeals reversed the defendant's contempt conviction for conduct exhibited toward an assistant district attorney prosecuting him for a criminal offense. During a recess awaiting the jury's verdict, the defendant "verbally accosted" the assistant district attorney with snide and derogatory remarks. ***Creasy***, 885 S.W.2d at 833. ***Creasy*** reasoned that when the defendant made his comments, the court was not in session, the prosecutor was not performing any prosecutorial duties and a verdict was returned without incident. Thus, the defendant's conduct, "although inappropriate, did not 'obstruct the administration of justice' as the statute requires . . . ." ***Id***. at 834.

In summary, we conclude that the contempt convictions as to both counts must be reversed. The record, even when affording the prosecution the strongest legitimate view of the proof, contains insufficient evidence to establish beyond a reasonable doubt that Blount violated subsections (1), (2) and (4) of the contempt statute.

Our decision in this matter should not be interpreted to condone the actions of Blount. We find his conduct unwarranted and indeed, reprehensible. An attorney has an absolute duty to display an attitude of professional respect for the court and the judicial process. Rule 8, Rules of Supreme Court of Tennessee. This conduct is required under the Code of Professional Responsibility. Not all professional misconduct is criminal, however. ***Oberhellmann***, 946 F.2d at 53. We quote with approval the court in ***In re Bozorth***, 118 A.2d 430, 436 (N.J. Super. Ct. Ch. Div. 1955), when stating that "the power to punish [for criminal contempt] should be used only in flagrant cases and with the utmost forbearance. It is always better to err on the side of tolerance and even with disdainful indifference." ***Bozorth***, 118 A.2d at 436. Nor does our opinion render such behavior as that displayed by Blount totally without consequence, for any professional misconduct is subject to sanction before the Disciplinary Board.

As to the award of attorney's fees, T.C.A. § 29-9-103 provides:

> Punishment. -- (a) The punishment for contempt may be by fine or by imprisonment, or both.
>      (b)  Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except

as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

Generally, attorney's fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity. ***Pullman Standard, Inc. v. Abex Corp.***, 693 S.W.2d 336, 338 (Tenn. App. 1985). The punishment for criminal contempt is clearly delineated in the above statute. ***See Butler v. Butler***, App. No. 02A01-9409-CH-00218 (Tenn. App. 11-21-95). The award of attorney's fees is vacated.

Our holding renders it unnecessary to consider the remaining issues.

The judgment of the trial court is reversed and this cause dismissed. The parties to the underlying case were in no way responsible for Mr. Blount's actions. Mr. Black entered these proceedings at the request of the trial judge. Therefore, although we reverse, we believe this is a proper case to exercise our discretion in taxing the costs of this appeal to Mr. Blount, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
McLEMORE, Sp. J. (Concurs)