In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1297

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHINYERE ALEX OGOKE,

*Defendant.*

APPEAL OF: MICHAEL I. LEONARD, Attorney

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 00105-2 — **Ronald A. Guzmán**, *Judge.*

ARGUED MARCH 27, 2017 — DECIDED JUNE 22, 2017

Before BAUER and EASTERBROOK, *Circuit Judges,* and
DEGUILIO,[*] *District Judge.*

---

[*]  Of the United States District Court for the Northern District of Indiana,
sitting by designation.

BAUER, *Circuit Judge.* Attorney Michael Leonard was convicted of contempt under 18 U.S.C. §§ 401(1) and (3) after he made a closing argument, in violation of the district court's written order, regarding a witness who did not testify at trial. He appeals his conviction on both substantive and procedural grounds. We affirm.

## I.  BACKGROUND

On February 26, 2013, Leonard was appointed under the Criminal Justice Act to defend Chinyere Ogoke, who had been charged with two counts of wire fraud. On May 6, 2015, Ogoke's codefendant Matthew Okusanya entered into a cooperation plea agreement with the government. Ogoke proceeded to trial on July 13, 2015, represented by Leonard and pro bono co–counsel, Robert Robertson.

On May 4, 2015, the government filed a motion *in limine* seeking to prohibit the defense from introducing any evidence or making any argument related to potential witnesses not called to testify at trial. On May 13, 2015, Judge Ronald Guzmán entered an order stating that "unless there is a showing that the missing witness is peculiarly within the government's control, either physically or in a pragmatic sense, Defendant is precluded from commenting on the government's failure to call any witness." The order further stated that if such a showing were made, counsel must petition the court before making any comment or argument regarding the missing witness.

It was the government's theory at trial that Ogoke and Okusanya were coconspirators in a fraud scheme. Okusanya appeared on the government's witness list, but the government

decided not to call him during trial. During his closing argument, Leonard said the following:

> Now, according to the government, Mr. Okusanya was intimately involved in the scam, right? Matthew Okusanya was intimately involved in the scam. He did all sorts of things. … [B]ut ask yourselves about the testimony you heard from here in the case, which is your evidence. Matthew Okusanya didn't say one word about Alex Ogoke. Wouldn't you think if Matthew Okusanya was a grand schemer with Alex Ogoke that he would have some evidence, some? … [H]e's the guy. Do you remember? He's working in cahoots, according to the government, with Alex Ogoke. Not one word from Matthew Okusanya during the trial about Alex Ogoke. That's strange. Now, the government could get back up and say: Mr. Leonard could call Mr. Okusanya as a witness. Remember the instruction. We don't have to raise a finger. They have to prove Alex Ogoke guilty beyond a reasonable doubt. We don't have to call witnesses to say they won't say something. If the government had something from Okusanya to support the idea that this guy did it, you would have heard from the grand schemer, Mr. Okusanya.

At this point, the government objected; Judge Guzmán sustained the objection and struck that portion of the argu-

ment. After closing arguments, Judge Guzmán adjourned the trial for the weekend.

The following Monday, before the jury returned a verdict, Judge Guzmán issued an order to show cause as to why Leonard should not be held in contempt for violating the court's ruling on missing witness arguments. The same day, the jury found Ogoke not guilty on all counts.

The government sent a letter to the court seeking to recuse itself from the contempt proceeding "because this office has other pending matters with Mr. Leonard and the contempt proceeding arises in a trial that our office handled with Mr. Leonard that resulted in an acquittal." Based on those conflicts, the government asked that the court appoint another attorney to prosecute the contempt charge.

On August 26, 2016, Judge Guzmán held a hearing on the order to show cause. Leonard was represented by counsel, but no prosecutor was appointed. When the hearing began, Judge Guzmán asked if Leonard had any questions about the charges; his counsel responded that he did not. Judge Guzmán then asked how Leonard wished to proceed. Leonard's counsel explained that he would like to make a brief opening remark and then call Leonard and Robertson to testify. Judge Guzmán then took judicial notice of the entire record of proceedings of the case, and Leonard's counsel began presenting his defense.

Leonard testified that, after initially reviewing the order on missing witnesses when it was issued, he failed to review it again during the trial or prior to his closing argument. He stated that, during his closing, he had not realized he violated the ruling, but later acknowledged that he had made a "huge

mistake." He testified that the mistake was unintentional and that he did not willfully violate the order. Robertson testified that the issue of the missing witness ruling did not come up while he and Leonard were preparing for closing arguments. He stated that if he had realized the argument regarding Okusanya would have violated the court's ruling, he would not have allowed his trial partner to make it. Leonard's counsel then gave a brief summary of the testimony and Leonard's position, and the court adjourned the hearing.

On September 17, 2015, Judge Guzmán issued a written order holding Leonard in contempt and ordering him to pay a $300 fine. He noted that Leonard was represented by counsel at the hearing, "who was afforded an opportunity to present evidence and argument in any form or manner he wished." Judge Guzmán found incredible Leonard's argument that he forgot about the order and that his violation was unintentional. That finding was based on Leonard's extensive experience as a defense attorney; a discussion between Leonard and Judge Guzmán at the pretrial conference about the government's missing witness motion *in limine*; and a specific line of cross–examination that Judge Guzmán believed Leonard used to lay the groundwork for his closing argument. Judge Guzmán held, therefore, that Leonard's conduct was intentional and found him in contempt under 18 U.S.C. §§ 401(1) and (3).

On September 25, 2015, Leonard moved to stay the contempt order while his new counsel evaluated arguments for reconsideration or appeal. Judge Guzmán granted the motion, extending the time to file a motion for reconsideration or a notice of appeal until October 20, 2015. Leonard filed a motion

to vacate the order on that date, arguing that the court failed to follow the correct procedures under Federal Rule of Criminal Procedure 42; that he was not given proper notice of the specific conduct in question and the specific evidence to be used against him; and that the evidence was insufficient to support his conviction.

Judge Guzmán denied Leonard's motion to vacate on February 4, 2016. On February 12, 2016, Leonard filed a notice of appeal, seeking review of both the contempt order and the denial of his motion to vacate. Due to the government's recusal, we appointed counsel to act as *amicus curiae* and defend the district court's orders on appeal.

## II. DISCUSSION

### A. Jurisdiction and Timeliness of Appeal

On appeal, Leonard raises a number of challenges to both the original contempt order and the denial of his motion to vacate. He filed his notice of appeal, however, well after the 14–day deadline from the entry of the original contempt order. Thus, as an initial matter, we must determine whether we have jurisdiction to review both orders, or whether our review is limited to the denial of the motion to vacate.

First, we note that the time limit for filing an appeal in a criminal case, while mandatory, is not jurisdictional. *United States v. Rollins*, 607 F.3d 500, 501 (7th Cir. 2010). Moreover, "a motion for reconsideration presenting a substantive challenge to the decision … makes a district judge's order non–final and postpones the time for appeal until entry of the order on that motion." *Id.*

Here, Leonard's filings occurred within the appropriate time periods and ultimately presented a substantive challenge to the initial order, such that the decision on that order was not final until the court denied Leonard's motion to vacate. Leonard moved to stay the contempt order eight days after it was issued. The court granted that motion and extended the time in which Leonard could file a motion for reconsideration or a notice of appeal. Leonard also met that deadline with the filing of his motion to vacate. As described above, that motion clearly presented substantive challenges to the contempt order. Thus, Leonard had 14 days from entry of the order denying that motion, which was the final order, to file his notice of appeal. Because he met that deadline, his appeal was timely as to both the original contempt order and the denial of his motion to vacate. We will, therefore, review all of Leonard's challenges to both orders.

### B. Sufficiency of the Evidence

We first address Leonard's contention that there was insufficient evidence to support his conviction. When reviewing a sufficiency challenge, we view the facts in the light most favorable to the prosecution, in this case the district court, and "ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Salinas*, 763 F.3d 869, 877 (7th Cir. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If the record presents a reasonable basis for the conviction, it must stand. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).

A court may find a person in contempt under 18 U.S.C. § 401(1) for "[m]isbehavior … in its presence or so near thereto

as to obstruct the administration of justice[.]" A conviction
under this section requires proof of an intentional and objective
obstruction to the administration of justice. *United States v.
Griffin*, 84 F.3d 820, 832 (7th Cir. 1996) (citing *United States v.
Seale*, 461 F.2d 345, 367–68 (7th Cir. 1992)). Section 401(3) allows
for a finding of contempt for "[d]isobedience or resistence to [a
court's] lawful writ, process, order, rule, decree, or command."
18 U.S.C. § 401(3). A contempt conviction under this subsection
requires proof that the violation of the court's order was
willful. *Doe v. Maywood Hous. Auth.*, 71 F.3d 1294, 1297 (7th Cir.
1995). As is true for other substantive criminal offenses,
criminal contempt must be proved beyond a reasonable doubt.
*Griffin*, 84 F.3d at 831–32.

Here, Judge Guzmán found Leonard guilty of contempt
under both §§ 401(1) and (3). Leonard argues that there was
insufficient evidence to show that he intentionally violated the
court's order, which is an essential element for a conviction
under both sections. In addition, specifically as to § 401(1), he
argues that there was insufficient evidence to show objectively
that his violation constituted an obstruction of justice. How-
ever, as demonstrated below, because we find the evidence
sufficient to sustain his conviction under § 401(3), we need not
address the obstruction argument. *See Griffin*, 84 F.3d at 833
("A violation of § 401(3) requires only willful disobedience of
a court order," whereas § 401(1) requires both subjective intent
and objective obstruction of justice).

Leonard does not deny that he violated a clear order from
the court. Thus, the only remaining question is whether there
was evidence of his willfulness sufficient to sustain his
conviction under § 401(3). The original contempt order

explicitly stated that Judge Guzmán did not find credible Leonard's testimony that he forgot that the argument would be improper. The order highlighted three reasons that supported that finding.

First, Judge Guzmán noted that he and Leonard engaged in an extended conversation about the motion *in limine* at the pretrial conference. Second, he found that, based on Leonard's extensive experience as a defense lawyer, Leonard should have been generally aware of the rule that counsel may not argue an adverse inference from an opposing party's failure to call a witness, absent a showing that the witness was available only to that party. *See, e.g.*, *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993).

Finally, contrary to Leonard's contention at the hearing that he first considered and prepared the improper argument the night before his closing, Judge Guzmán found that Leonard laid the groundwork for his improper argument with a specific line of questioning during the trial. During his cross-examination of a special agent of the Office of the Inspector General, Leonard elicited testimony that the agent had numerous conversations with Okusanya within the past 60 days. Leonard also referred to Okusanya as an "important character" during this line of questioning. In his motion to vacate, Leonard argued that when he pursued this line of questioning, he still believed the government would call Okusanya as a witness. Judge Guzmán rejected that argument, however, and found that Leonard was attempting to demonstrate to the jury that Okusanya was available to government agents should they have wanted him to testify.

In our view, these factual findings provided Judge Guzmán with a sufficient basis to determine that Leonard's violation of the order was not an accident or a mistake. Moreover, the ultimate finding that Leonard acted willfully hinges on Judge Guzmán's credibility determination, to which we must defer. *See Griffin*, 84 F.3d at 832 ("We defer to the district judge's credibility determinations because of his familiarity with the record and his ability to personally observe the demeanor of the contemnor."). Therefore, we find that there was sufficient evidence to support Leonard's conviction under 18 U.S.C. § 401(3).

### C.  Use of Procedures Under Rule 42

Leonard's next argument is that Judge Guzmán committed reversible error by failing to comply with the procedures set forth by Federal Rule of Criminal Procedure 42. Though not explicitly stated in the show cause order or the original contempt order, the order denying the motion to vacate made clear that Judge Guzmán had operated pursuant to the summary procedures of Rule 42(b). Leonard contends that this was error and that Judge Guzmán could have proceeded properly only under Rule 42(a). He also argues that because Judge Guzmán afforded him a hearing, he erred by not appointing a prosecutor.

We review for an abuse of discretion a district court's decision on whether to proceed under Rule 42(a) or 42(b). *Griffin*, 84 F.3d at 829. Rule 42(a) provides that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice." Fed. R. Crim. P. 42(a). The notice must state the time and place of the trial, allow a

reasonable time to prepare a defense, and "state the essential facts constituting the charged criminal contempt and describe it as such." Fed. R. Crim. P. 42(a)(1). Subsection (a) also requires the court to request that the government prosecute the contempt, and if the government declines, "the court must appoint another attorney" to do so. Fed. R. Crim. P. 42(a)(2). Rule 42(b), however, states that "[n]otwithstanding any other provision of these rules, the court … may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies[.]" Fed. R. Crim. P. 42(b).

Leonard's first argument, that Judge Guzmán erred by proceeding under Rule 42(b), fails upon review of the rule's plain text. It is undeniable that the contemptuous conduct—the improper argument regarding Okusanya—occurred in Judge Guzmán's presence. Because he observed Leonard violate the order, Judge Guzmán was not required to afford him any of the process set forth in subsection (a); he could have held Leonard in contempt on the spot. *See Griffin*, 84 F.3d at 829 (noting that, because contemptuous conduct occurred in court during a criminal trial, the district court had the authority to act summarily under Rule 42).

Leonard disagrees and cites *United States v. Moschiano*, 695 F.2d 236 (7th Cir. 1982), as support. There, we held that "resort to summary disposition of criminal contempt under [then Rule 42(a), now Rule 42(b)] is permissible only when the express requirements of the rule are met and when there is a compelling reason for an immediate remedy or time is of the essence." *Id.* at 251 (quotation marks omitted). Leonard contends that there was no compelling reason for an immedi-

ate remedy in this case, as evidenced by Judge Guzmán's decision to wait until after the trial concluded to issue the show cause order. Therefore, because he did not hold Leonard in contempt in the middle of the closing argument, Judge Guzmán improperly relied on subsection (b), and Leonard should have been afforded the full process set forth in subsection (a).

That argument, however, conflates the need for an immediate remedy with the need for an immediate finding of contempt. *Moschiano* does not, nor does any other case Leonard cites, stand for the proposition that Rule 42(b) is only appropriate if the court makes an immediate finding of contempt once the contemptuous act has been committed. In fact, the Supreme Court has held that while a judge has the ability to immediately and summarily punish contemptuous conduct, "if he believes the exigencies of the trial require that he defer judgment until its completion he may do so without extinguishing his power." *Sacher v. United States*, 343 U.S. 1, 11 (1952); *see also Griffin*, 84 F.3d at 830. *Moschiano*'s holding simply means that once the textual requirements of Rule 42(b) are met, there must also be a showing that there was an immediate need to remedy the contemptuous conduct. *See Moschiano*, 695 F.2d at 251–52.

Here, Judge Guzmán did provide an immediate remedy to the conduct by granting the government's objection and striking the improper argument from the jury's consideration. The fact that he chose not to interrupt the trial by holding Leonard in contempt during his closing argument does not mean that it was inappropriate for him subsequently to proceed summarily under Rule 42(b). *See Sacher*, 343 U.S. at 11.

Leonard then argues that because Judge Guzmán afforded him a hearing to present testimony in his defense, he was also required to follow the strict requirements of Rule 42(a), specifically to appoint a prosecutor. As we have demonstrated, however, the court was justified in proceeding summarily under subsection (b). Thus, he was not required even to provide Leonard with the opportunity to be heard, much less to appoint an independent prosecutor. We do not believe that by affording Leonard some additional process—to which he was not otherwise entitled—Judge Guzmán forfeited his ability to proceed under Rule 42(b). *See United States v. Lowery*, 733 F.2d 441, 447–48 (7th Cir. 1984) (indicating that a judge may employ the summary procedure of Rule 42 while still providing some additional process, such as a brief hearing).[1]

### D. Due Process Challenge

Leonard's final argument is that Judge Guzmán violated his due process rights by failing to give him adequate notice of the evidence to be used against him. Specifically, he argues that the order should have notified him that Judge Guzmán intended to rely on the transcript from the pretrial hearing and the cross–examination of the special agent as evidence of

---

[1] Leonard separately argues that by appointing *amicus curiae* for this appeal, this Court compounded the district court's error of failing to appoint a prosecutor. Specifically, he contends that by directing *amicus* to defend the district court's orders, we removed "the neutrality and independence required of an independent prosecutor under Rule 42(a)." Again, however, this argument is premised on the rejected proposition that proceeding under Rule 42(a) would have been the only proper course. Therefore, we find no merit in this argument and no error in our decision to appoint *amicus*.

his willful contempt. Again, because this challenge turns on Judge Guzmán's decision of the appropriate procedures under Rule 42, we review it for an abuse of discretion. *Griffin*, 84 F.3d at 829.

Leonard's due process argument fails for a number of reasons. First, as demonstrated by our analysis above, Judge Guzmán was justified in proceeding summarily under Rule 42(b). Thus, by the plain language of the rule, Leonard was not entitled to any specific notice of the charges or the evidence, as might be required under subsection (a). There can be no due process violation for inadequate notice if no such notice was required in the first instance.

However, even if Judge Guzmán were required to provide Leonard notice of the charges and evidence against him, we believe he did so adequately. In this context, we have held that in order to satisfy due process, the notice need only "state the essential facts constituting the contempt charged[.]" *United States v. Ray*, 683 F.2d 1116, 1126 (7th Cir. 1982). Judge Guzmán's order to show cause met that standard. It clearly set forth, in detail, the order granting the government's motion *in limine* on the missing witness issue. It then stated that "[i]n direct violation of the Court's order, during closing argument in the instant trial, defense counsel expressly argued an adverse inference from the government's failure to call a witness, namely Matthew Okusanya[,]" which constituted a violation of 18 U.S.C. §§ 401(1)–(3). That description of the conduct and the charged violations was sufficient to satisfy due process.

Leonard contends that because Judge Guzmán did not specifically state that he intended to examine Leonard's conduct at the earlier phases of the trial, he was not able to adequately prepare his defense. We find that argument unpersuasive. It is clear, both from his admission that he violated the order and from the defense he presented in his testimony (*i.e.*, that he had forgotten about the order), that Leonard was aware that the issue most crucial to his guilt or innocence was whether his violation was intentional. Thus, it should have also been clear to Leonard that, to determine intent, it would be necessary for Judge Guzmán to consider Leonard's actions leading up to the violation. Additionally, at the start of the hearing, Judge Guzmán asked if Leonard had any questions about the charges in the show cause order, and his counsel stated that he did not. Judge Guzmán then took judicial notice of the entire trial record, and counsel presented no objection.

Moreover, any potential prejudice that Leonard faced by initially failing to understand the evidence to be used against him was cured through his motion to vacate and the denial of that motion. Leonard raised this exact argument in his motion to vacate and specifically presented an alternative explanation for the line of cross–examination, in rebuttal to the finding that those questions were an indication of his intent to violate the order. Thus, Judge Guzmán ultimately had the opportunity to consider all of Leonard's arguments, which he rejected.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the conviction.